IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID B. MCGARREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 07-cv-1556 |
| | ) | |
| MRS. MARQUART, Records supervisor at | ) | |
| SCI Mercer, individually; MR. STOWICKY, | ) | |
| Superintendent of SCI Mercer, individually, | ) | |
| BRIAN McCOLLIM; Director of CCC Alle-Kiski, | ) | |
| individually, JASON GORDISH, PA Dept. of | ) | |
| Corrections Counselor, Individually; MR. GENT, | ) | |
| SCI Mercer employee, Individually; | ) | |
| MS. JANET KIMMEL, SCI Mercer Counselor, | ) | |
| individually; DAVID JENKINS, Community | ) | |
| Corrections Parole Agent, individually; | ) | |
| JOANNE RICARDI, RSAT Supervisor Parole | ) | |
| Agent, individually; KATHERINE ROWE, | ) | |
| Case Analysis PBPP, individually; | ) | |
| ALAN M. ROBINSON, PBPP Assistant Counsel, | ) | |
| individually; and | ) | |
| INVESTIGATOR RAY HEINLE, Pennsylvania | ) | |
| Dept. of Corrections, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Presently before the Court is the MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT, with brief in support, filed by Defendants Mrs. Marquart, Mr. Stowicky, Mr. Gent, Janet Kimmel, David Jenkins, Joanne Ricardi, Katherine Rowe, Allen M. Robinson and Ray Heinle (Document Nos. 78 and 79); the MOTION TO DISMISS (JOINDER) filed by Defendants Brian McCollim and Jason Gordish (Document No. 86), the RESPONSE and BRIEF in Opposition filed by Plaintiff (Document Nos. 89 and 90), and the

REPLY BRIEF filed by Defendants McCollim and Gordish.  All briefs have been timely filed and the matter is now ripe for disposition.

## BACKGROUND

The events leading up to this lawsuit began on October 30, 1998, when Plaintiff David McGarrey ("Plaintiff") pled guilty in the Court of Common Pleas of Beaver County, Pennsylvania to five counts of theft by deception and one count of driving under the influence.  Thereafter, Plaintiff was sentenced to a term of imprisonment of four (4) to ten (10) years.

On March 17, 2004, after being incarcerated for approximately five and one-half years, the Pennsylvania Board of Probation and Parole ("PBPP") granted Plaintiff parole and mandated that he complete the Pennsylvania Department of Corrections ("DOC") Residential Substance Abuse Treatment ("RSAT") Program.  In a decision letter dated March 22, 2004, which is attached to Plaintiff's Complaint, the PBPP stated that Plaintiff was to be "reparoled to Phase II upon successful completion of Phase I.  [Plaintiff] [m]ust successfully complete Phase II and Phase III of RSAT supervision." (Document No. 93-2).[1]

---

[1] The "Phases" referred to in the letters are individual segments of the RSAT Program.  Phase I requires the offender to spend six months in a therapeutic community at one of several state correctional institutions.  Phase II requires that the offender be placed in a community corrections center.  During Phase II, offenders have the opportunity to earn privileges such as furloughs away from the center.  If offenders successfully complete Phases I and II, they are placed in Phase III, in which they are reparolled and an intensive care plan is developed, which helps the offender stay drug-, alcohol-, and crime free.  Phase III also involves an enhanced level of supervision which requires weekly face-to-face meetings with the offender and his/her parole agent.  (Document No. 93 at 6-7).

On April 12, 2004, the Pittsburgh RSAT office received a second letter from the PBPP regarding Plaintiff's participation in the RSAT program. Plaintiff alleges that this second letter was fraudulently created and then placed in his DOC file, replacing the letter dated March 22, 2004, in order to improperly charge him with the crime of escape.  The April 12, 2004 letter differs from the March 17, 2004 letter only insofar as it states that Plaintiff was "[r]eparoled to an approved plan **upon successful completion of phase II of RSAT.  [Plaintiff is] required to complete Phase III of RSAT supervision**."[2]  (Document No. 60-4) (emphasis added).  Despite the change in language, both letters reflect that, pursuant to directives from the PBPP, Plaintiff was placed in Phase II of the RSAT program on March 17, 2004, at the Alle-Kiski Community Corrections Center.   Both letters also indicate that Plaintiff was required to complete Phase III of the RSAT program as a prerequisite to his release.

Plaintiff alleges that he was paroled on March 17, 2004, and that on August 15, 2004, he legally "relocated" to the State of Colorado.[3]  Plaintiff further alleges that on August 19, 2004, four (4) days after he relocated to Colorado, the PBPP "temporarily suspended" his parole without hearing or due process.  Plaintiff alleges that Defendant Brian McCollim (Director of

---

[2] The Court notes that the latter pages of the first letter (which states that Plaintiff was required to complete all phases of the RSAT treatment plan) were omitted from the attachment to the Complaint filed by Plaintiff.  Nevertheless, a complete copy of the letter was attached by Defendants to their Brief in Opposition and will be considered by the Court as a letter of decision by a public agency.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[3] Plaintiff alleges that he signed a "condition of parole" but it is unclear from the present record whether these conditions permitted Plaintiff to leave the jurisdiction.  Plaintiff alleges that "he was told and believed he was free to relocate to Colorado."  Document No. 92 at 2.

3

Alle-Kiski) and those individuals working under his authority, mistakenly and negligently classified Plaintiff as an escapee, which resulted in a warrant for his arrest being issued.

On February 8, 2005, Plaintiff, while in Colorado, was taken into custody as an escapee. He waived extradition, was transported back to Pennsylvania, and was returned to the custody of the Pennsylvania DOC.   Plaintiff alleges that he was held in the "hole" without access to counsel until December 23, 2005, when Judge R.D. Hathaway dismissed the fugitive charges filed against him.

On March 8, 2006, Plaintiff sent a letter to the Pennsylvania DOC at SCI Somerset and  a letter to Alan M. Robinson, the Assistant Counsel to the PBPP.  The two letters, which are both attached to the Complaint, reflect Plaintiff's desire to bring a civil action against the named agencies pursuant  to 42 PA. CONS. STAT. ANN. § 5522.  The letters allege that Plaintiff "did not become aware of incident (sic) until he was extradited back to Pennsylvania from the State of Colorado and brought before District Justice Frank J. Pallone, Jr. on or about April 14, 2005."

On March 9, 2007, a year after Plaintiff sent his two letters, Plaintiff, *pro se*, filed the present action in the United States District Court for the Eastern District of North Carolina, Southern Division.  On October 29, 2007, the district court in North Carolina  granted the request of the Defendants to transfer the case to the United States District Court for the Western District of Pennsylvania on the basis of improper venue pursuant to, *inter alia*, Title 28, United States Code, § 1406(a), and Title 28, United States Code, § 1391(b).

4

On April 29, 2009, Plaintiff, through counsel, filed a Second Amended Complaint, which is the subject of the present motions to dismiss. In the Second Amended Complaint, Plaintiff alleges four (4) counts of civil rights violations, all purportedly arising under Title 42, United States Code, § 1983.

In Count One of the Second Amended Complaint,[4] Plaintiff alleges that his constitutional rights were violated by his "unlawful and malicious arrest. In Count Two,[5] Plaintiff alleges that his constitutional rights were violated as a result of the "concerted unlawful and malicious detention and confinement." In Count Three,[6] Plaintiff alleges that Defendants conspired to deprive him of his liberty in violation of the Fifth and Fourteenth Amendments. Finally, in Count Four,[7] Plaintiff claims that Defendants "knowingly, recklessly, or with gross negligence failed to instruct, supervise, control and discipline on a continuing basis any and all officers, agents and employees" who engaged in the alleged acts of false imprisonment, false arrest, and conspiracy.

All Defendants have moved to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). Defendants argue, *inter alia*, that Plaintiff's claims are barred by the applicable statute of limitations because all of Plaintiff's alleged claims accrued on February 8, 2005, the day Plaintiff was arrested in

---

[4] Count One is entitled "Violations of 42 U.S.C. 1983; Arrest."

[5] Count Two is entitled "Violation of 42 U.S.C. 1983; Detention and Confinement."

[6] Count Three is entitled "Violation of 42 U.S.C. 1983; Conspiracy."

[7] Count Four is entitled "Violation of 42 U.S.C. 1983; Refusing, or Neglecting to Prevent."

Colorado. Defendants also argue that the letters sent by Plaintiff to the two state agencies are not adequate to toll the statute of limitations because such letters do not apply to claims in federal court and, further, because such letters do not constitute adequate service of process. In response, Plaintiff contends that his lawsuit is not time-barred because he did not become aware of the "incident" until he was brought before District Justice Pallone on or about April 14, 2005. Consequently, Plaintiff contends that his original Complaint was timely filed within the Pennsylvania two-year statute of limitations.[8]

## STANDARD OF REVIEW

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of the Complaint filed by Plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a ***plausible*** claim for relief survives a

---

[8] Plaintiff filed his original Complaint on March 9, 2007.

motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

However, nothing in *Twombly* or *Iqbal* has changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). That is, the Supreme Court did not impose a new, heightened pleading requirement, but reaffirmed that FED. R. CIV. P. 8 requires only a short, plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 552-53). Additionally, the Supreme Court did not abolish the FED. R. CIV. P. 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* (citing *Twombly*, 550 U.S. at 553).

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a FED. R. CIV. P. 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999). However, in resolving a FED. R. CIV. P. 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, decisions of government agencies and administrative bodies, and documents referenced in the complaint or which are essential to a plaintiff's claim and are attached to either the Complaint or the defendant's motion. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Attached to Plaintiff's Complaint are the letters sent by him to the Pennsylvania DOC and to the PBPP, both purporting to give notice of his intent to sue. Also attached are the letters giving notice of the decision of the PBPP. Because Defendants have attached a complete version

7

of the letter received on March 22, 2004, that has also been considered by the Court. All of the above named documents are referenced in the Complaint, are essential to Plaintiff's claim, and some are public records, i.e., the letters of decision issued by the PBPP. *Id.* Therefore, the Court has considered these documents without the necessity of converting the motion to dismiss into a motion for summary judgment. *Id.* at 1196-97.

## LEGAL ANALYSIS

Defendants present a number of compelling arguments in support of their motions to dismiss the Second Amended Complaint. However, because the Court finds that Plaintiff failed to file his lawsuit within the applicable statute of limitations, it is not necessary for the Court to address each of the additional arguments advanced by Defendants.

Due to the unusual circumstances surrounding the filing of this case, the Court will undertake a three-part analysis to fully address the statute of limitations issue. First, the Court must determine whether the North Carolina or Pennsylvania limitations statute for personal injury cases applies; next, the Court must determine the date when the statute of limitations began to run on Plaintiff's claims; and finally, the Court must determine, assuming that the Pennsylvania limitations statute applies, if the letters sent by Plaintiff to the two state agencies tolled the statute of limitations.

### I. Statute of Limitations for the Purpose of 42 U.S.C. § 1983 Actions

It is well established that there is no independent statute of limitations for bringing a claim under 42 U.S.C. § 1983 in federal court. Instead, the United States Court of Appeals for

the Third Circuit has determined that "the [forum] state's statute of limitations for personal injury" applies to claims filed under 42 U.S.C. § 1983. *Sameric*, 142 F.3d at 599. The statute of limitations for personal injury actions in North Carolina is three years. *See* N.C. Gen. Stat. § 1-52(16). However, the statute of limitations for personal injury actions in Pennsylvania is two years. *See* 42 PA. CONS. STAT. ANN. § 5524. Because this lawsuit was initially filed in the United States District Court for the Eastern District of North Carolina, the question arises as to whether the North Carolina (three year) or the Pennsylvania (two year) statute of limitations for personal injury actions is applicable in the present case. This determination is highly relevant because if the North Carolina limitations statute applies, Plaintiff's claims will be timely; however, if the Pennsylvania limitation statute applies, Plaintiff's claims will be time-barred in their entirety.

## II.  Applicable statute of limitations

When a claim is transferred pursuant to 28 U.S.C. § 1406(a), the substantive law of the transferee forum generally applies as though the suit had originally been brought in the transferee forum. *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) (citing 14D CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3827 (3d ed. 2007)); *accord Weber v. McDonald's Sys. of Europe, Inc.*, No. 84-442-WKS, 1985 U.S. Dist. LEXIS 23912 (D. Del. May 15, 1985) (holding that the substantive law (including the statute of limitations) of the transferee forum applies when a transfer of venue is made pursuant to 28 U.S.C. § 1406(a)).

The United States Court of Appeals for the Third Circuit, however, has not ruled on the issue of which statute of limitations should apply when the limitations statute in the transferee forum is shorter than that of the transferor forum.[9]  However, nearly all appellate courts which have faced this issue have determined that the interests of justice require the application of the transferee forum's statute of limitations, even if the limitations statute of the transferee forum is shorter.  *See e.g. Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 588 (8th Cir. 2007) (citing cases from the United States Courts of Appeals for the Second, Fourth, Fifth, Sixth, Ninth, Tenth and Eleventh Circuits which all recognize that the statute of limitations of the transferee forum should be applied when a transfer is effectuated pursuant to 28 U.S.C. § 1406(a)).  The rationale for this overwhelming weight of authority rests on a desire to preserve the rights of the parties, especially the rights of defendants, who are at the mercy of plaintiffs with regard to forum selection.  *Eggleton*, 495 F.3d at 588.

The *Eggleton* court recognized two reasons for adopting the statute of limitations of the transferee court: first, a defendant could be unfairly prejudiced by suffering the unfavorable consequences of a plaintiff's improper forum selection; and second, allowing a transferee court to utilize the law of the improper forum could "encourage procedural gamesmanship among plaintiffs generally."  *Id.*  Other courts have recognized similar unfair outcomes.  *E.g. Broome v.*

---

[9] Although the Court of Appeals has not addressed this specific issue, the appellate court recently again noted the general principle that "[i]n our view, the sounder interpretation is that the transferee forum's limitations statute applies and the date of the initial filing in the improper forum counts as the date of the filing in the transferee forum for limitations purposes when the case is transferred rather than dismissed under § 1406(a)." *Lafferty*, 495 F.3d at 81 (emphasis added).  It is important to note, however, that the statute of limitations at issue in *Lafferty* involved the same period of time.

10

*Antlers' Hunting Club*, 448 F. Supp. 121, 124 (M.D. Pa. 1978) (fearing that a plaintiff could effectively extend a statute of limitations by filing in an improper forum with a longer statute of limitations, then have the case transferred back to the proper forum where the statute had long since expired).

In the case *sub judice*, Plaintiff originally filed his lawsuit in an improper venue: the United States District Court for the Eastern District of North Carolina. The district court in North Carolina transferred the case to the Western District of Pennsylvania pursuant to 28 U.S.C. § 1406(a) for lack of proper venue. Therefore, based on the sound reasoning of *Eggleton,* as well as the decisions of the majority of appellate courts which have considered the issue, the Court finds and rules that the statute of limitations of Pennsylvania, the transferee forum, governs Plaintiff's claims. *See Eggleton*, 495 F.3d at 588. Applying the Pennsylvania limitations statute is not only in accord with the overwhelming decisions of appellate courts, it also comports with the well established principle that the statute of limitations of the improper forum should not be applied in the transferee forum. *Lafferty*, 495 F.3d at 81.

The Court further finds that the application of the Pennsylvania limitations statute also serves the interests of justice because it eliminates the risks of forum shopping and prevents harm to Defendants as a result of Plaintiff's mistake. *Eggleton*, 495 F.3d at 588. If the Court were to apply the North Carolina statute of limitations, Plaintiff would effectively be extending the Pennsylvania statute of limitations for personal injury cases to three years. For each and all of these reasons, the Court finds that the two-year Pennsylvania statute of limitations for personal injury actions will be applied in this case. *Sameric*, 142 F.3d at 599.

### III. Accrual of Plaintiff's Claims

Having determined that Pennsylvania's two-year statute of limitations applies to Plaintiff's claims, it remains to be determined precisely when his claims accrued. For federal claims arising out of alleged constitutional violations brought pursuant to 42 U.S.C. § 1983, the accrual date of the claim is determined in accordance with federal law. *Disabled in Action of Pa. v. Se. Pa. Trans. Auth.*, 539 F.3d 199, 209 (3d Cir. 2008). Generally, a § 1983 claim accrues "when the plaintiff **knew or should have known of the injury** upon which its action is based." *Sameric*, 142 F.3d at 599 (citing *De Botton v. Marple Twp.*, 689 F.Supp. 477, 480 (E.D. Pa. 1988) (emphasis added)). Therefore, the statute of limitations begins to run once a plaintiff has become aware or should have become aware of the underlying injury. *Id.*

For claims of false arrest and false imprisonment brought under 42 U.S.C. § 1983, the statute of limitations begins to run "at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007); *see also Walker v. Fisher*, 150 Fed. Appx. 160, 161 (3d Cir. 2005) (finding that a § 1983 claim predicated on conspiracy, false arrest and false imprisonment accrued at the time plaintiff was arrested).

For claims which allege civil conspiracy under 42 U.S.C. § 1983, courts also focus on the moment of plaintiff's actual injury. The United States Court of Appeals for the Third Circuit has instructed that "[t]he rule generally adopted by the case law in this circuit provides greater certainty as to when a particular cause of action arises. . . . . In the civil case, **actual injury is the focal point**, not the illegal agreement per se, as is true in the criminal context." *Kost v. Kozakiewicz*, 1 F.3d 176, 191 (3d Cir. 1993) (citing *Wells v. Rockefeller*, 728 F.2d 209, 217 (3d

Cir. 1984) (emphasis added)).  As with the general rule, the plaintiff's knowledge must be of the injury, not the underlying acts, in order for the claim to accrue.  Thus, although the language varies slightly between different types of claims arising under 42 U.S.C. § 1983, the general rule holds that once a potential plaintiff becomes aware of his injury, or should have known of his injury, the claim accrues.

Finally, it is also important to note just how little knowledge a plaintiff must have in order for his claim to accrue.  The general rule establishes a relatively low standard, requiring only that the plaintiff **should have known** of his injury for the claim to accrue.  *Sameric*, 142 F.3d at 599.  Additionally, the United States Supreme Court has held that "the cause of action accrues even though the **full extent of the injury is not then known or predictable**. . . . Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough."  *Wallace*, 549 U.S. at 391 (emphasis added).  Thus, complete knowledge of a claim is not necessary; a plaintiff must only be aware of the injury, or should have been aware of the injury, in order for his claim to accrue --  knowledge of the full extent of the injury is not necessary.

In the present case, Plaintiff argues that he timely filed his Complaint because he did not "become aware of the incident" prior to his being extradited to Pennsylvania and his initial appearance before District Justice Pallone on or about April 14, 2005.  However, Plaintiff's argument is contradicted by the facts set forth in his Second Amended Complaint which establish that he was taken into custody on February 8, 2005, when he was arrested in Colorado.  The Second Amended Complaint further reveals that Plaintiff's arrest and detention were

13

effectuated pursuant to legal process, by way of the execution of a fugitive warrant. Consequently, the Court finds and rules that Plaintiff's claims all accrued on February 8, 2005, the date he was arrested in Colorado.

### IV. Tolling of the Statute of Limitations

The final prong of the analysis is for the Court to determine whether any actions taken by Plaintiff tolled the statute of limitations. Plaintiff argues that the letters he sent to the Pennsylvania DOC and the PBPP served to provide timely notice to the two Pennsylvania state agencies of his intention to sue. Plaintiff alleges that these letters, sent pursuant to 42 PA CONS. STAT. ANN. § 5522, tolled the statute of limitations for his claims. However, the Court finds that such argument is without merit for the following two reasons.

First, the United States Court of Appeals for the Third Circuit has rejected the argument that 42 PA. CONS. STAT. ANN. § 5522 applies to actions in federal court arising under 42 U.S.C. § 1983. *See Knoll v. Springfield Twp. School Dist.*, 763 F.2d 584, 585 (3d. Cir. 1985) (holding that the Pennsylvania state statute of limitations for personal injury actions governs claims predicated on 42 U.S.C. § 1983, not the six-month statute of limitations in 42 PA. CONS. STAT. ANN. § 5522). Moreover, Pennsylvania courts have held that a letter sent pursuant to 42 PA. CONS. STAT. ANN. § 5522 is not sufficient to halt the running of a statute of limitations because it merely provides <u>notice</u> to the governmental unit that the plaintiff <u>may</u> institute a lawsuit. *Nagy v. Upper Yoder Twp.*, 652 A.2d 428, 431 (Pa. Commw. Ct. 1994).

Additionally, as Defendants correctly point out, Plaintiff's two letters do not satisfy the requirements established by 42 PA. CONS. STAT. ANN. § 5522. The letters were not sent to the

Pennsylvania state agencies within six months of the accrual of the claim,[10] nor were the letters sent to the proper state agencies. *See* 42 PA. CONS. STAT. ANN. § 5522(a)(1) (requiring that notice also be sent to the office of the Attorney General). Consequently, the Court finds that the letters are not sufficient to either give adequate notice or to toll the applicable statute of limitations.

## CONCLUSION

At the time Plaintiff was arrested and taken into custody in Colorado, he had suffered sufficient injury to cause all of his claims to have accrued. As such, the statute of limitations commenced on February 8, 2005 and expired two years later on February 8, 2007. Unfortunately, because Plaintiff did not file his Complaint until March 9, 2007, more than two years after his claims accrued, his claims are time barred and the motions to dismiss will be granted.

An appropriate Order follows.

McVerry, J.

---

[10] The letters themselves are both dated March 6, 2006, more than a year after the claims accrued (February 8, 2005) and, thus, were mailed outside the six-month window provided by 42 Pa. C.S. § 5522(a)(1).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID B. McGARREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 07-cv-1556 |
| | ) | |
| MRS. MARQUART, Records supervisor at | ) | |
| SCI Mercer, individually; MR. STOWICKY, | ) | |
| Superintendent of SCI Mercer, individually, | ) | |
| BRIAN McCOLLIM; Director of CCC Alle-Kiski, | ) | |
| individually, JASON GORDISH, PA Dept. of | ) | |
| Corrections Counselor, Individually; MR. GENT, | ) | |
| SCI Mercer employee, Individually; | ) | |
| MS. JANET KIMMEL, SCI Mercer Counselor, | ) | |
| individually; DAVID JENKINS, Community | ) | |
| Corrections Parole Agent, individually; | ) | |
| JOANNE RICARDI, RSAT Supervisor Parole | ) | |
| Agent, individually; KATHERINE ROWE, | ) | |
| Case Analysis PBPP, individually; | ) | |
| ALAN M. ROBINSON, PBPP Assistant Counsel, | ) | |
| individually; and | ) | |
| INVESTIGATOR RAY HEINLE, Pennsylvania | ) | |
| Dept. of Corrections, individually, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

AND NOW, this 12th day of January, 2010, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Motion to Dismiss filed by Defendants Mrs. Marquart, Mr. Stowicky, Mr. Gent, Janet Kimmel, David Jenkins, Joanne Ricardi, Katherine Rowe, Allen M. Robinson, Ray Heinle, and joined by Defendants Brian McCollim and Jason Gordish, is **GRANTED.**

The Clerk of Court is directed to docket this case closed.

BY THE COURT:

<u>s/Terrence F. McVerry</u>
United States District Court Judge

cc: Ralph D. Karsh, Esquire
Karsh & Associates
Email: rklaw2007@yahoo.com

Mariah Passarelli, Esquire
Office of the Attorney General
Email: mpassarelli@attorneygeneral.gov

Samuel H. Foreman, Esquire
Weber Gallagher Simpson Stapleton Fires & Newby
Email: sforeman@wglaw.com